# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Court File Number:  09-cv-3202  (PAM/RLE)

RICHARD GACEK,
    *Plaintiff,*

v.                                   **AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

1. OWENS & MINOR DISTRIBUTION, INC.,
2. MARC W. JOHNSON, and
3. GREGORY FRANK MATTSON,
    *Defendants.*

Plaintiff, Richard Gacek, for his Complaint against Defendant, Owens & Minor Distribution, Inc., states and alleges as follows:

## NATURE OF CLAIM

1. Plaintiff Richard Gacek (hereinafter "Gacek"), brings this action to vindicate violations of his civil rights and to redress the unlawful, discriminatory termination and retaliatory conduct and employment practices of 1st Defendant, Owens & Minor Distribution, Inc. (hereinafter "Owens & Minor").  Gacek's claim against Owens & Minor arises out of Owens & Minor's retaliation against Gacek because Gacek testified in a prior civil action filed by a former black-employee of Owens & Minor against Owens & Minor.  Gacek's truthful testimony was distasteful to Owens & Minor.  That prior action was settled by Owens & Minor.  After, Gacek's testimony, several of  Owens & Minor's managerial staff and agents, by words, acts and deeds vowed and or were brazenly intent on discharging Gacek from employment.

Owens & Minor has a history of not wasting time and going to any length to retaliate against Gacek, anytime Owens & Minor feels hurt by Gacek's action(s), notwithstanding that the actions were lawful.
Owens & Minor's latest retaliation against Gacek culminated in the illegal,

1

wrongful and discriminatory discharge of Gacek from employment on or about 4/13/2009.

Gacek seeks reliefs for discrimination, wrongful/discriminatory termination and retaliation/reprisal against Owens & Minor in violation of Civil Rights Act of 1991 (as amended) and 42 USC 1981(as amended); the Minnesota Human Rights Act; Minnesota State common law, the Collective Bargaining Agreement (hereinafter "CBA") between Owens & Minor and Minnesota's Health Care Union Local 113, SEIU, in force at all material times and the Family Medical Leave Act.

2. Gacek brings this action against 2nd Defendant, Marc W. Johnson ("Johnson"), to vindicate violations of his civil rights and to redress the intentional and retaliatory conduct and unlawful practices of Johnson. Gacek's claim against Johnson personally, arises out of Johnson's intentional retaliation against Gacek. During Gacek's employment with Owens & Minor, Gacek filed about three meritorious complaints with the Minnesota Occupational Safety and Health Administration (hereinafter "Minnesota OSHA") against Owens and Minor. Johnson, as General Manager of Owens & Minor's distribution center in Mounds View, Minnesota, where Gacek worked, did not take these Minnesota OSHA complaints kindly. Johnson intentionally retaliated against Gacek at the slightest opportunity and also directed or condoned similar conduct by his subordinate managers and supervisors against Gacek.

At all material times, Johnson would appoint himself to personally investigate any matter concerning Gacek. Johnson would not wait for his managers or supervisors or subordinates to investigate the matter first and make recommendations to him, for review as General Manager. Johnson was always biased against Gacek in the conduct and result of his purported investigations. Gacek complained and requested an appointment of a neutral person to investigate his matters. Neither Johnson nor Owens & Minor paid heed.

After Gacek testified against Owens & Minor on 9/23/2008, in the action filed by a former employee of Owens and Minor, Johnson on 10/3/2008 falsely accused Gacek of signing a forklift checklist for other material handlers (Gacek's fellow warehouse employees). Gacek denied the allegation.

2

On 11/12/2008, Gacek lodged a verbal harassment complaint against 3rd Defendant, Gregory Frank Mattson (hereinafter "Mattson"), a fellow material handler. Owens & Minor did nothing. The same Mattson subsequently complained that Gacek used his left shoulder to bump into his left chest in the break-room. Gacek, a diminutive and slim person did not bump the chest of Mattson, who is far bigger than Gacek. Johnson, as usual took up investigation of this complaint against Gacek by himself. When Johnson could not find enough reason to dismiss Gacek from employment, Johnson brought up all imaginable and conceivable allegations against Gacek that he could remember since the time Gacek was employed by Owens & Minor. Johnson brought up these matters notwithstanding the fact that they have either been resolved or closed. Johnson also deprived Gacek fair hearing.

On 2/2/2009, Gacek's attorney wrote and warned Johnson through Owens & Minor, to desist from his obvious and apparent retaliatory actions against Gacek. Johnson was not deterred. On 3/30/2009, Johnson suspended Gacek from employment and on 4/13/2009 discharged Gacek.
Gacek seeks relief against Johnson for engaging in intentional retaliation/reprisal in violation of Minnesota Human Rights Act and applicable federal laws and case laws.

3. Gacek brings this action this action against 3rd Defendant, Gregory Frank Mattson (Mattson), a material handler and current employee of Owens & Minor, for vindication of his reputation and common law rights and to redress the intentional falsehood verbally/orally disseminated by Mattson concerning Gracek.

On 11/4/2008, an employee of Owens & Minor committed suicide at his home. The employee was William (Bill) Showers, who was also a material handler. Mattson and Showers were buddies. Gacek's complaint against Mattson arises out of the false statements made by Mattson to various employees of Owens & Minor including one Rodney Foner. Mattson falsely alleged against Gacek to wit: "Rich (Gacek) was the reason for Bill's (Showers') death;" "Rich pushed Bill over the edge and Bill shot himself;" and "Rich's (Gacek's) behavior towards Bill was the last straw that broke the camel's back".
Mattson's slanders are not protected or privileged speech. Mattson's slander caused several employees of Owens & Minor, including Rodney Foner, to

3

lose their respect and regard for Gacek (who, at all material times, was a union steward). They also looked at Gacek as an evil person.

Apparently, Mattson acted in concert with or at the instance or instruction of Owens & Minor to make the slanderous statements or remarks in order to provide a basis for Owens and Minors to investigate Gacek and ultimately dismiss him from employment. Despite complaints and warnings from Gacek, Mattson persevered in his false and injurious allegations and eventually Johnson purporting to act on Mattson's complaint and slander commenced investigation of Gacek. Notwithstanding that the investigation did not reveal that Gacek was responsible for Showers death or that Gacek bumped into the chest of Mattson, nevertheless, the investigation led to dismissal of Gacek from employment.

Pursuant to Minnesota State common law, Gacek seeks reliefs for slander against Mattson and Owens & Minor, jointly and severally, for loss of his reputation, shame, mortification, extreme emotional distress and mental anguish, in an amount in excess of $3,000,000 (three million dollars), for compensatory and punitive damages to be determined at trial.

## THE PARTIES

1. Plaintiff Gacek is an individual and resides in the State Minnesota within jurisdiction. Gacek is an American born citizen. At all material times, Gacek was an employee of Owens & Minor. Gacek's employment was terminated by Owens & Minor on 4/13/2009.

2. 1st Defendant, Owens & Minor, is a Virginia corporation with its principal place of business at 9120 Lockwood Boulevard, Mechanicsville, Virginia 23116-2029. Owens & Minor is engaged in the business of distributing medical/surgical supplies to hospitals and other health care facilities nationwide. Owens & Minor operates more than forty (40) distribution centers across the country, including one in Mounds View, Minnesota, where Gacek was hired to do mainly warehouse, shipping and receiving work. Owens & Minor employs more than 500 employees.

3. 2nd Defendant, Marc W. Johnson ("Johnson"), is the General Manager of Owens & Minor distribution center in Mounds View, Minnesota. Johnson resides in the City of Eagan, Minnesota, within jurisdiction. Johnson used his position as General Manager of Owens & Minor to engage in intentional discrimination and retaliation against Gacek, and eventually wrongfully terminated Gacek's employment.

4. 3rd Defendant, Gregory Frank Mattson ("Mattson") is a current employee of Owens & Minor. Mattson is employed as a Material Handler. At all material times, Mattson and Gacek both worked as material handlers, in the Warehouse at Owens & Minor's distribution center in Mounds View, Minnesota. They also both worked, at all material times, the "5:00 a.m. to 1:00 p.m. shift." Mattson intentionally trumped up and spread verbally injurious and damaging falsehood against Gacek. Mattson also allowed himself to be used by Owens & Minor and Johnson as agent for the intentional discrimination, retaliation and wrongful termination meted out to Gacek. Mattson aided and abetted Owens & Minor and Johnson in the intentional wrongful acts suffered by Gacek.

## **JURISDICTION**

5. This action arises under 42 USC 1981; the Civil Rights Act of 1991; the Minnesota Human Rights Act; Minnesota State common law, the Collective Bargaining Agreement (hereinafter "CBA") between Owens & Minor and Minnesota's Health Care Union Local 113, SEIU, in force at all material times, and the Family Medical Leave Act.

   This Honorable Court has jurisdiction by virtue of the residence of the parties. This Honorable Court equally has jurisdiction by virtue of 42 USC 1983; 42 USC 1985(3); 42 USC 1988; 42 USC 2000e-5(f) (3), and the Family Medical Leave Act.
   This Honorable Court also has jurisdiction pursuant to 28 USC §§ 1331, 1343(a) (3), and 1343(a) (4). The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 USC 1367(a).

## **VENUE**

6. Pursuant to 28 U.S.C. Section 1391, venue in the United States District Court for the District of Minnesota is proper because Owens & Minor carries on business in Minnesota, and also has a local office in Minnesota, that employed Gacek.  Furthermore, all the events or a substantial part thereof, giving rise to this action occurred in Minnesota.

## **FACTUAL BACKGROUND**

7. On or about 2/1/2001, Plaintiff Gacek was employed by Owens & Minor as an hourly paid Material Handler.  Gacek worked in the Warehouse at Owens & Minor's distribution center in Mounds View, Minnesota.  As a material handler, Gacek's responsibilities included, among other things, storing, shipping and receiving of products.

8. At all material times, Gacek belonged to a worker's union, Minnesota's Health Care Union, Local 113, SEIU (hereinafter "The Union").  At all material times, all material handlers employed by Owens & Minor in its Minnesota distribution center belonged to this Union.  The terms and conditions of Gacek's employment were covered by a collective bargaining agreement administered by Owens & Minor and the Union.

9. On or about 4/13/2009, Owens & Minor unlawfully terminated Gacek's employment.

## COUNT I:  DEFAMATION (SLANDER)
### (Against and perpetuated by 3rd Defendant, Gregory Frank Mattson and Owens & Minor)

10. At all material times, Gacek was Union Steward.  In sum, a Union Steward makes sure that there are no violations of the CBA either by the material handlers (union members) or Owens & Minor.

11. About the last week of October 2008 and first week of November 2008, another material handler William (Bill) Showers (hereinafter "Showers"), who also worked the 5:00 a.m. to 1:00 p.m. shift, started coming to work an hour earlier than usual and left an hour earlier than usual.  Some material handlers started to question and complain to Gacek (as Union Steward) about Showers new work start-time and end-time (schedule).

12. The material handlers questioned Gacek and wondered if Showers' new work-start-time and end-time was a result of newly created position with a new shift.  This was because the CBA provided that new positions and vacancies lasting more than five (5) days shall be posted by Owens & Minor and awarded to the senior qualified applicant.

13. Some other material handlers informed Gacek that Showers told them that he was starting early because he was having personal issues and also going hunting!

14. With these conflicting information, Gacek approached Johnson for clarification.  Johnson told Gacek that Showers was having personal problems and issues with his family.  Gacek in turn informed Johnson that he understood that Showers was also going hunting.

15. Consequently, Steve Julkowski (Warehouse Manager, hereinafter "Julkowski") and Mike Gerrel (Warehouse Supervisor) had a meeting with Showers on 11/4/2008.

16. That same day (11/4/2008), when Showers got home, he committed suicide.

17. Showers and Mattson were buddies.

18. On 11/6/2008 Mattson[1] went about telling other material handlers that what pushed Showers over the edge was Gacek because Gacek complained about Showers to Johnson.

19. Mattson told Rodney Foner (a material handler), amongst numerous other material handlers, on or about 11/6/2008, that "Rich (Gacek) was the reason for Bill's (Showers') death". Mattson further stated that "Rich pushed Bill over the edge and Bill shot himself".

20. Mattson also told several other material handlers that "Rich's (Gacek's) behavior towards Bill was the last straw that broke the camel's back".

21. In due course, Gacek heard about the injurious and damaging rumor/falsehood that Mattson was spreading about him.

22. On 11/12/2008 Gacek lodged a verbal harassment complaint against Mattson with Owens & Minor's Human Resources Department. Owens & Minor did nothing.

23. On the same 11/12/2008, Gacek, Mattson and some other material handlers were at the time clock to sign out for the day. Gacek used the opportunity to ask Mattson why Mattson was telling people that he (Gacek) pushed Showers over the edge.

24. Mattson responded "isn't it obvious?"

25. Mattson's slanders are not protected or privileged speech. Mattson's slanders caused several employees and material handlers of Owens & Minor, including Rodney Foner, to lose their respect and regard for Gacek (who, at all material times, was a union steward and of good repute). They also looked at Gacek as an evil person.

26. Gacek avers that apparently Mattson acted in concert with Owens & Minor to make the slanderous statements or remarks in order to provide a basis for Owens and Minor to investigate Gacek and ultimately dismiss him from employment.
   Alternatively, Mattson acted as an agent of Owens & Minor to make false, bogus and injurious statements about Gacek to enable Owens & Minor to purportedly find a basis to retaliate against Gacek via a pretentious

---

[1] Mattson called in sick on 11/5/2008.

investigation.
Despite complaints and warnings from Gacek, Mattson persevered in his false and injurious allegation and eventually Johnson commenced an investigation of Gacek. Johnson conducted the purported investigation by himself. At the end of the purported investigation, Owens & Minor terminated Gacek's employment.

27. On or about 1/12/2009, a material handler informed Gacek that Mattson had complained to Julkowski that Gacek attempted to run him down with his forklift.

28. About the same day Gacek went up to Julkowski to deny the allegation.

29. Notwithstanding that the purported investigation conducted by Johnson did not reveal that Gacek was responsible for Showers death, nevertheless, the investigation led to or substantially contributed to the dismissal of Gacek from employment on 4/13/2009.

30. Mattson and Owens & Minor, jointly and severally, have injured Gacek in his reputation and deliberately used false and injurious statements to orchestrate the dismissal of Gacek from employment, all in violation of Gacek's rights under Minnesota State common law.

31. Gacek seeks reliefs for slander and conspiracy to slander against Mattson and Owens & Minor, jointly and severally, for loss of his reputation, shame, mortification, odium and emotional distress in an amount in excess of $3,000,000 (three million dollars), for compensatory and punitive damages, to be determined at trial.

## COUNT II:  DISCRIMINATION
### (Against 1st Defendant, Owens & Minor)

32. Owens and Minor frequently retaliated against Gacek.

### 1st OSHA Complaint - Unsafe Warehouse

33. Gacek complained to OSHA on 9/1/2004 that Owens & Minor's warehouse was unsafe because there existed several safety concerns. At the time, Gacek was Union Steward. Consequently, OSHA inspected Owens & Minor's warehouse from 9/8/2004 - 9/13/2004.

34. Shortly after Gacek's complaint, Owens & Minor retaliated against Gacek. On 9/14/2004, Johnson suspended Gacek from employment for purported insubordination. The reason for the suspension was spurious.

35. Upon completion of its investigation , OSHA found Gacek's complaint true and determined that Owens & Minor's Warehouse did not meet OSHA's safety standard. OSHA sanctioned Owens & Minor.

### Owens & Minor Stalks Gacek

36. Sometime in 2005, Gacek called in sick and was absent from work. Julkowski (Warehouse Manager) left his work at Owens & Minor, drove to Gacek's house, parked on the street very close to Gacek's house and spent a considerable amount of time lying in wait to see what Gacek was doing.

37. When Gacek came out of his house and drove off in his vehicle, Julkowski drove off from his parked position and followed Gacek. Gacek noticed Julkowski from his rear mirror, pulled over by the roadside and Julkowski engaged him in an altercation.

38. Prior to this stalking incident, Owens & Minor has never followed around an employee or directed that an employee who was off-duty because of sickness, be followed around.

## 2nd OSHA Complaint - Owens & Minor refuses to Certify Gacek

39. On or about 4/5/2007 Gacek was injured at work.  Gacek was injured on a forklift.  The injury forced Gacek to be out of work for about one week.  Upon resumption of duties, Gacek was on light-duty (no equipment operation) for about one week.  Thereafter, Owens & Minor put Gacek back on the forklift without re-certifying (retraining) him.   Gacek made representations to Owens & Minor for re-certification but to no avail.  Gacek complained to OSHA.

40. On 5/23/2007, OSHA requested Owens & Minor to investigate and respond.  The same day, Owens & Minor re-certified (retrained) Gacek.


## Owens & Minor picks out Gacek for Discipline for Door Propped Open

41. On 6/8/2007, about two weeks after Gacek filed the second complaint with OSHA, Owens & Minor gave Gacek a *"final written warning"* for allegedly propping open the employee's entrance door for a co-worker.  Meanwhile, Owens & Minor did not write-up another employee or other employees that also propped the same door open.
Specifically, Gacek complained about one Roger Porter (a Material Handler) who also propped the same door open but Owens & Minor did not give a written warning to Roger Porter.
42. To save face, Owens & Minor (through Julkowski) subsequently gave Roger Porter a *"verbal written warning"* on 6/11/2007.  But Owens & Minor gave Gacek a final written warning.


## 3rd OSHA Complaint - Gacek Complains about Discrimination

43. On 6/11/2007, Gacek filed a discrimination complaint with OSHA alleging that because he complained to OSHA about Owens & Minor's refusal to re-certify him, Owens & Minor picked him out for discipline (final written warning) for propping open, for another employee, the employees' entrance door, whilst not disciplining in equal manner other employees who also propped the same door open for fellow teammates (material handlers).

11

44. OSHA investigated, and Owens & Minor opted to settle the discrimination complaint. In the Settlement Agreement, Owens & Minor agreed to reduce Gacek's "Final written warning" to "verbal warning".

45. In the "Non-Admission" provision of the Settlement Agreement, Owens & Minor and Gacek expressly agreed that:

> By entering into and executing this Agreement, neither party in any way or manner admits, expressly or impliedly, any allegations or counterclaims against it, or that it violated any state, federal or local statute, rule, regulation or ordinance, or that it engaged in any wrongdoing whatsoever. The parties intend and agree that the fact that they have entered into this Agreement shall in no way be understood or interpreted by the other party or any third party as an admission of wrongdoing.

46. Notwithstanding, the foregoing provision, Owens & Minor cited the "propping the door open" incident as a wrongdoing by Gacek and used it as part of grounds for termination of Gacek's employment.

## COUNT III:  WRONGFUL TERMINATION
### (Against 1st Defendant, Owens & Minor)

47. On or about 9/23/2008, Gacek testified as a witness in a discrimination action filed in the United States District Court, District of Minnesota, filed by a former employee (Mesfin Tewolde) against Owens & Minor.

48. In the Tewolde case, Owens & Minor claimed, in part, that Tewolde was written-up on some occasions for failure to sign the Forklift Checklist sheet, before using the forklift. Tewolde countered that other material handlers were doing the same thing but were not written up. So, why him? Tewolde further countered that somebody was signing the forklift checklist for everyone, thus there was no need to sign the same. Tewolde's response evoked inquiry into whether a teammate (material handler) was signing the forklift checklist for others.

49. During his deposition in the Tewolde case, Gacek was asked about the forklift checklist.  Gacek stated that:

> Well, I know of several people right now that
> don't sign it….  Someone else goes up there and
> puts all the numbers down and we all go to work….
> Uh-huh.  Don't know who.  Because I don't even
> go over to where the checklist piece of paper is.
> I just jump on my lift and I go to work….  Somebody
> else signs off on my forklift for me.
> *Gacek Deposition Transcript 40.*

50. On 10/3/2008, 2nd Defendant, Johnson (General Manager), Colleen Coopersmith (Administrative Assistant) and Donna Borchardt (HR Coordinator) constituted a meeting and called material handler Messrs. Sean Tyo, Gacek and Rick Flannigan individually and in turns into this meeting for questioning.

51. Messrs. Tyo, Gacek and Flannigan all testified in the Tewolde case via depositions.  Messrs. Tyo, Gacek, and Flannigan all work in the morning (a.m.) shift. There are about 15 to 18 material handlers that work in the morning shift.  Not all the morning shift employees were questioned even though their names were also written on the forklift checklist.  Owens & Minor singled out Messrs. Tyo, Gacek and Flannigan because they gave adverse but truthful testimony in the Tewolde case.

52. Johnson started the meeting with each of these three employees (Gacek, Tyo, and Flannigan) by threatening them that anything they say may be used to discipline them including termination.  Johnson accused Gacek of signing the forklift checklist for other material handlers. Gacek denied the accusation.

53. On 2/2/2009, Gacek's attorney requested Owens & Minor to desist from retaliating against Gacek and Tyo and Flannigan.

54. On 3/30/2009, Owens & Minor suspended Gacek from employment.

55. On 4/13/2009, Owens & Minor terminated Gacek from its employment.

56. Gacek avers that his termination was unlawful, wrongful, discriminatory and retaliatory, in violation of his civil rights and law.


## COUNT IV:  INTENTIONAL DISCRIMINATION AND RETALIATION
### (Against 2nd Defendant, Marc W. Johnson)

57. Gacek incorporates by reference paragraphs 7 through 56 as if fully set forth.

58. At various times during his employment with Owens & Minor, Gacek had complained to Owens & Minor and directly to Johnson too, that a neutral person be appointed to investigate any matter concerning him because Johnson was always biased against him.  Neither Owens & Minor nor Johnson paid heed.  Johnson continued to investigate matters related to Gacek.

59. The Settlement Agreement, Owens & Minor and Gacek entered into in 2007 related to the "propping the door open" incident.  The "Non- Admission provision of the settlement agreement provided in pertinent part that "the parties intend and agree that the fact that they have entered into this Agreement shall in no way be understood or interpreted by the other party or any third party as an admission of wrongdoing."

60. On 4/13/2009, Johnson deliberately and intentionally, in violation of the Settlement Agreement, interpreted the propping the door open incident as a wrongdoing by Gacek.  Johnson relied on this alleged wrongdoing as part of the negative behaviors which he alleged against Gacek and used the same to fire Gacek from employment.

61. On 9/23/2008 the deposition of Gacek was taken in the defunct matter of *Mesfin Tewolde v. Owens & Minor Distribution, Inc.*  Johnson was one of the two representatives of Owens & Minor present at that deposition.  Johnson was present, when Counsel for Tewolde warned, at the beginning of the deposition, that if after testifying Gacek feels that he is being harassed or retaliated against by Owens & Minor, he should complain.

62. Ten days after Gacek's deposition (precisely on 10/3/2008), Johnson in company of two other employees of Owens & Minor, constituted a meeting. Gacek was summoned to the meeting. Gacek appeared.

63. Before Gacek was asked any question, Johnson warned and threatened Gacek saying that anything Gacek said may be used to discipline Gacek including termination of his employment. Thereafter, Johnson proceeded to accuse Gacek of signing a forklift checklist for other material handlers.

64. Gacek denied the allegation and three times at that meeting reminded Johnson that Owens & Minor was warned at the deposition not to retaliate against him. Johnson ignored Gacek, but kept on questioning Gacek. The allegation against Gacek regarding signing of forklift checklist arose from Gacek's testimony in the Tewolde case.

65. On or about 2/2/2009, Gacek's attorney warned Owens & Minor to desist from its retaliatory actions against Gacek. Johnson ignored the warning but rather proceeded to terminate the employment of Gacek on 4/13/2009.

66. Owens & Minor's Code of Honor (Standards of Conduct) provides that every teammate at Owens & Minor is entitled to fair treatment, courtesy and respect. The Code of Honor also provides that Owens & Minor will not retaliate against anyone who in good faith reports a suspected violation of the code of honor or reports a compliance issue. Gacek's testimony was in compliance with the Code of Honor.

67. On or about 11/12/2008, Gacek lodged a verbal harassment complaint against Mattson (3rd Defendant). Johnson, as General Manager, did nothing. Sometime in the same month of November 2008, Mattson lodged a counter-complaint against Gacek. Johnson investigated Mattson's complaint.

68. None of Mattson's unsubstantiated allegations (from November 2008 through March 2009) against Gacek, assuming they are true, is qualified as a basis for termination of Gacek's employment. Owens & Minor employees who have engaged in physical contact (which is Mattson's only discernible complaint against Gacek) with other employees have at the most merited a final written warning not termination or dismissal. But in Gacek's case, assuming Mattson's allegation was true (which is not conceded), Johnson terminated Gacek's employment.

15

69. Throughout the time Johnson investigated Mattson's complaint (s), from November 2008 through March 30, 2009, Johnson never requested or gave Gacek an opportunity to timely respond to Mattson's allegations and or present witnesses to rebut Mattson's allegations.
Also, regarding teammates that Johnson alleged testified against Gacek in his purported investigation, Johnson did not give Gacek an opportunity to timely confront them or timely respond to their testimonies and or present witnesses in rebuttal.
On 3/30/2009, Johnson relied on Mattson's complaint, the purported adverse testimonies of certain unnamed teammates, and past resolved or closed issues (some of them protected by confidential settlement agreement), as pretexts to suspend Gacek.  An hour before suspending Gacek, Johnson called Gacek into his office to question him.  That was the only hearing that Johnson gave Gacek and of course no opportunity to confront his accuser(s).

70. Johnson deliberately denied fair hearing to Gacek in order to terminate Gacek's employment.  Assuming Gacek did the things alleged against him, which is not conceded, Johnson did not apply progressive discipline in terminating the employment of Gacek.
Johnson also did not mete out similar discipline that Owens & Minor meted out to teammates who engaged in violations similar to the violation alleged against Gacek by Mattson.
Johnson deliberately and intentionally engaged in discrimination and retaliation in the termination of Gacek's employment.

71. There are no viable grounds or just cause for investigating and or terminating the employment of Gacek save as a reprisal for Gaceks's deposition testimony which Johnson finds unsavory.  Johnson as well as Owens and Minor, was offended, displeased and upset with the deposition testimony of Gacek in the Tewolde case.
Gacek's testimony, in part, forced Owens & Minor to settle the Tewolde case.

72. Gacek avers that Johnson intentionally discriminated and retaliated against him as a reprisal for his truthful and lawful complaints and testimonies against Owens and Minor.

16

## COUNT V:  RETALIATION/REPRISAL
### (Against 1st Defendant, Owens & Minor)

73.  Gacek further incorporates by reference paragraphs 7 through 72 as if fully set forth.

74. Owens & Minor intended to retaliate and did retaliate against Gacek for his testimony in Tewolde's case, by suspending and terminating Gacek's employment.

75.  Owens & Minor used 1st Defendant, Mattson, as an agent/instrument to trump up unsubstantiated allegations against Gacek, and use the same to get rid of or terminate the employment of Gacek.

## DAMAGES

The conduct of the above-named Defendants , as set forth herein , in violating Gacek's rights under 42 USC 1981; the Civil Rights Act of 1991; the Minnesota Human Rights Act; the Family Medical Leave Act; and the common Law of Minnesota, caused injuries , damages and harm to Gacek, including but not limited to past and future economic losses, past and future non-economic losses, including loss of reputation , emotional distress, shame, humiliation , pain, and suffering, inconvenience, mental anguish, impairment in the quality of life, and consequential losses.

## RELIEFS SOUGHT

WHEREFORE, Plaintiff prays this Honorable Court for relief against the Defendants, jointly and severally, as follows:

a. Under the First Cause of Action for Libel against Gregory Frank Mattson and Owens & Mi nor, compensatory damages in excess of $3,000,000 (three million dollars) and punitive damages to be determined at trial;

b. Under the second cause of Action for Discrimination against Owens & Minor, compensatory and punitive damages to be determined at trial;

c.  Under the Third cause of Action for Wrongful and Discriminatory Termination against Owens & Minor, compensatory damages and punitive damages to be determined at trial; plus an award for back pay and lost benefits, as well as for front pay.

d.  Under the Fourth Cause of Action, for Intentional Discrimination and Retaliation against Marc W. Johnson, compensatory and punitive damages to be determined at trial.

e.  Under the Fifth Cause of Action Retaliation and or Reprisal against Owens & Minor, compensatory and punitive damages to be determined at trial;

f.  An award to Gacek for costs , disbursements and interest on any awards at the highest rate allowed  by law;

g.  An award to Gacek's attorneys for reasonable attorneys' fees and costs, including but not limited to expert witness fees as provided in 42 U.S.C. Section 2000e- 5(k); 42 USC 1981a, 42 USC 1988 and as provided under state law;

h.  An award of civil penalty to the State of Minnesota pursuant to Minn. Stat. Section 363A.33, Subd. 6 and Minn. Stat. 363A.29, Subd. 4, against Owens & Minor and Marc W. Johnson for engaging in unfair discriminatory practice.

i.  Such other and further reliefs as this Honorable Court may deem fit and proper in the circumstances.

DATED:  <u>11-24-2009</u>               */s/  P. Chinedu Nwaneri*
                                       P. Chinedu Nwaneri, Esq.
                                       Nwaneri & Associates, Pllc
                                       4655 Nicols Road, Suite 106
                                       Eagan, MN 55122

                                       *Telephone:  (651) 917-0633*
                                       *Fax: (651) 917-0691*
                                       E-mail:  nwaneri@integra.net

                                       *Attorney for Plaintiff*

## **ADDRESSES FOR SERVICE**

1. Owens & Minor Distribution, Inc.
   C/o Its Registered Agent
   National Registered Agents, Inc.
   590 Park Street, #6
   St. Paul, Minnesota 55103

2. Marc W. Johnson
   1624 Sherwood Way
   Eagan, MN 55122-2711

3. Gregory Frank Mattson
   22830 Unser Street NE
   Bethel, MN 55005